The next and last case for oral argument is People v. Dallacosta, and I would note that there's an appellant's motion to cite additional authority. We are taking it with the case, and we will, of course, allow the opposing party to file whatever they would like in response. I'm not sure I understand. Are you granting? Yes. Right. You're not going to file any supplemental? No, I'll talk about it briefly, but I think it's at the start of the ruling, so I have no response. Okay. May it please the Court, Counsel? My name is Janine Terrence. You're going to have to speak up a little bit. I apologize. My name is Janine Terrence. I'm an appellate defendant with the Court District Office of the State Health Offender, representing the minor Joshua Dallacosta. On direct appeal, Joshua presented four issues for review. First, whether the mandatory minimum 45-year sentence for murder imposed on him at 15 years of age was a de facto natural right sentence in violation of the Eighth Amendment. Second, whether Joshua's statement to law enforcement should have been suppressed. Third, whether the automatic transfer provision violated the Eighth Amendment of the Constitution. And fourth, the issue presented in supplemental briefing and the issue I will be focusing on today, whether Joshua is entitled to a transfer hearing in juvenile court because of the procedural amendments to the automatic transfer statute. At the invitation of the Illinois Supreme Court... I can't hear you, so there's no mic. I'm sorry. That's for recording. That's not for amplification. I'm sorry. I apologize. I will yell at us. I don't care. At the invitation of the Illinois Supreme Court, the Illinois legislature in Public Act 99258 amended the automatic transfer statute by increasing the age of automatic transfer from 15 years old to 16 years old. Because that amendment was retroactive, we asked this court to remand the matter to juvenile court for a proceeding. The legislature passed the amendment on May 31, 2015. And by virtue of the Effective Date Act, it became effective, January 1, 2016. But the legislature did not express an effective date for the enactment of that amendment. The Illinois Supreme Court has provided that where the legislature fails to make an express statement of an effective date or otherwise fails to provide the temporal reach for a statute or an amendment to a statute, the courts are directed to rely on Section 4 of the Statute of Statutes. Section 4 represents a clear legislative directive as to the temporal reach of a statutory amendment or any repeals. That section provides that those amendments that are procedural in nature may be applied retroactively, while those that are substantive may not. The automatic transfer amendments are procedural in nature. Thus, they are retroactive. That amendment that raised the age of automatic transfer from 15 to 16 applied to Joshua, who was 15 years old at the time of the offense. He was no longer automatically excluded from the jurisdiction of juvenile court. The law now requires a hearing before his transfer to adult court. Where he had no hearing, the matter should be remanded for further proceedings to allow the state the opportunity to file for a discretionary transfer. If the court has no questions on that issue or any of the others in the brief, I would ask that you vacate his conviction and remand for the proceedings. Have you not raised the issue of the voluntariness of his waiver of Miranda? Yes, I did. I want to ask you some questions about that, if you're not going to address that. Sure. When he was arrested, he didn't have a shirt on. Yes. Do you know why? Why they didn't get him a shirt? I do not know why they didn't get him a shirt. I do understand that after the shooting occurred, Joshua became very disturbed. He walked into his room, and he stripped off his shirt, as I have told you, and he laid on the floor, and that's where the police officers found him. He was arrested, and the state did not get him a shirt. Right. So they arrest him at his home, find him on the floor, I think of his bedroom, right? His bedroom, yes. And then some 17 hours later, they questioned him. Yes. Is that correct? That's correct. Now, as I understand the video, what they did is I think I'm looking at the right thing. They read all the Miranda warnings in a row. Yes. They did not have him separately initial them. They did not stop after each one. No, they did not. And he had some kind of what looked like an old Army, what I would call an old Army blanket, green, dark green. Wrapped around himself. Right, that kept falling off kind of thing. Yes. And he had no adult advocate with him. No concerned adults present. Do you know why? According to the officers, because Joshua at that time was considered an automatic transfer to adult court, they felt he was not entitled to a concerned adult when present. And his mother at that time was incestuously interrogated. Right. Well, she was also involved implicitly. But was there a juvenile officer that could have been contacted? There is no indication in the record that they ever attempted to contact a concerned adult, whether it be a juvenile officer or anyone else on his behalf. So the statute that deals with that was not complied with at all? No, it was not. Okay. Now, and maybe these are better questions for Mr. Daly, but the document that was used to waive the rights, your client was 15 and, as I understand it, had a behavioral disorder of some kind. His classes, he didn't attend normal high school classes. He was a freshman that had been slated as a behaviorally disordered child in certain classes. Is there a transcript of that video? Do you know? There is a transcript of that video that's in the record. But it may be a part of the post-eviction record on the field. Okay. It's very, very difficult to hear. I'm sorry. No, the video. The video is very difficult. There is a transcript. But because of some error, part of that record was a part of his post-eviction appeal. So that may be a portion that's in the post-eviction appeal and not attached to the direct appeal. Okay. So when I watched the officers read the warnings. Yes. And as you argue in your brief, the officer said something like, this means that we're not yelling at you, we're not screaming at you. Do you understand that? And at that point, the young man said yes. What did he say yes to? It is unclear. At the time that Joshua is being interrogated, everyone acknowledges that he's very scared and he's nervous. And he was very timid. And they often had to ask him to speak up. It is not clear whether he's. They ask him a lot, like I'm asking you. Yes. So it's unclear whether he's just responding to their command of some sort or if he truly understands what's going on. Well, when he gets to the bottom of the form, the bottom of the form is the waiver, and he clearly says, what's this? And the officer says, this says I read it to you. And he signs it. Do you disagree? Or is it something else? I would argue that he did sign it, but his signing is no more than him being asked to sign it and he signed it. Given the circumstances of that interrogation, it is very unclear that he understood and it was a voluntary acceptance of what he knew or if he even understood what they had said. And given all of the events that had transpired that night, and it was very clear that this was a timid child. But he actually shot the gun, didn't he? He did admit to shooting a gun. He did it at the direction of his mother. Unfortunately for him, he was placed in a position where his mother placed the gun in his hands and told him to commit this offense. Would that be considered under the transfer statute if we were to grant you relief? Would those kinds of factors, his timidity, the fact his mother put the gun in his hand, those kinds of things, would that be considered as part of the transfer? Your Honor, if this court decides to send this case back, as I argue that you should, it would then be up to the prosecution at that point to determine whether or not they want to move for transfer. The circumstances of this case are unique and very tragic. This is a situation where you have a 15-year-old whose mother places a gun in his hand and commands that he do something that he does not want to do. There were two individuals shot. One lost their life that night. And the state chose not to charge him in the second shooting. In seeming recognition of the tragic circumstances of this particular case, if this event had happened later when the legislature had acted, had changed the automatic transfer provision statute, we may not be here today because Joshua simply may not have been transferred to a bail court. So, yes, I do think that those circumstances can be taken into account. If there are no further questions. I don't believe so. Thank you, Counsel. Thank you. Counsel? Thank you, Your Honor. And thanks to the court and counsel. This is a case that will get through many questions. Just to clean up, one thing we talked about is I read people ask about Alvarez v. Howard, which is a case that was supplementally cited. It seems pretty clear that the change to the transfer statute, raising the age from 15 to 16 for automatic transfer, does apply retroactively. It would apply to this defendant. The relief that was cited in the Patterson case, the defendant cited, I think is the appropriate one to be that this court should vacate the sentence. Remand was caused to the trial court for the state to elect whether to seek a discretionary transfer to a bail court, which I think can do that and at least removes the first issue, which is the unconstitutionality of the sentence. So you would agree that this court should vacate the sentence? I believe there's no choice. The Supreme Court's decision just came out about a week ago. Right. You get a chance if you haven't read it yet. It's pretty clear in its particulars that the amendment is retroactive. But we remand for the hearing. Well, it's a discretionary hearing. Correct. This court basically vacated the sentence and remanded to allow the state the opportunity to seek discretionary transfer if it chooses to under the statute. The Patterson case of the defendant's site I think is pretty well written in both its analysis and I think in its remedy, which I think is appropriate. I think counsel had asked that the conviction be vacated. I don't think that was the remedy that they had. I think the remedy had more to do with sentencing and whether the state could choose not to seek transfer. I find that probably unlikely, but they could. That's their choice to make. So that being the case, I think at least the defendant's first issue is moved because it would be an advisory opinion at this point. I guess at this point the defendant's sentence has been vacated. So there's no sentence to challenge constitutionally given that disposition. However, the suppression issue is obviously germane because it relates to evidence at the state of the evidence disposal. But Justice Gates, if you want to correct one factual assertion that you made or a statement that you made, unless I'm mistaken, I've been prone to be that way at times. By my understanding, he was brought to the police station at midnight and then was questioned at 4.30 a.m. So you're indicating that he had been there for 15 hours before the questioning. No, that he had been in custody for 17 hours. Okay. He had been in custody is my understanding from one of the briefs. You may not want to mean where was he before midnight. I can't tell you. But I do agree that the video interrogation is 4.30 in the morning. That's true. And you would agree that he's in a very flimsy blanket without a shirt? I don't know. He was without a shirt. I don't know how flimsy the blanket was. He didn't. He keeps kind of pulling it over himself. It doesn't seem to. People do it like it's a test. I mean, I don't know. I don't think the explanation given why he didn't have a shirt, I think, is a little more congruent with my interpretation of what happened here, is that he was rousting out of bed late, early morning, late evening, and then he was taken to the police department. He probably didn't have a shirt on. So I'm not sure I agree that he'd been arrested and had to sit there for 15 hours. I think, again, this is my understanding. This is the only time it went wrong. I think that perhaps I indicated that he had been awake for 15 hours by the time that he had been questioned again. And so that may be the moment that had been planted in your head unless you saw something in the video. There's nothing in my notes that says that. You may be correct. It may be that he'd been awake. But if I'm not, I stand corrected. At any rate, he had been not asleep for a period of 15 hours. He had been awake since noon the prior day. Correct. So, you know, at the time that they initially questioned him, it had obviously been a fair amount of time that went by. But he did not, and I would add quickly here, he didn't exhibit any particular signs of fatigue or wasn't nodding off to sleep or wasn't complaining that he was too tired to think. I do want to make one point, and this is sort of the sideburner, because I think you bring up something really interesting. You talked about how the Miranda form was read to him all in a row. I don't know if this court's had the opportunity to look at it yet, and I can cite it as this authority. Oh, it's not pertinent to this position in this case. But the Ohio legislature has, as of January of this next upcoming year, changed and created a new set of rules for Mirandaizing juvenile and terrorizees where now the police are required, mandated, to read all of the Miranda Ordinance without interruption, without pausing, to allow them to ask questions of the rights as it's being read to them. At the conclusion of this, then they are required to ask the person being interrogated, do you have any questions? Do you understand? I'm sorry, the first question you have to ask is, do you want a lawyer? And then I think, and then there's one other question after that. So between me and the walls, I think this statute is probably bad. Any statute that requires police officers to not be sure that maybe you guys are going along, perhaps the thought process is they might get confused if you try to piecemeal the rights. I don't know. But I just find it interesting, Justice Gates, that what your observation is actually going to be the required procedure come January of this upcoming year, and you're going to be litigating that. And is that going to be a statutory requirement? It is an absolutely statutory requirement. In fact, confessions are mandated to be excluded if those requirements. If you're interested, I'll supplement if you want to take a look at it. Yeah, I would like you to supplement. That would be no problem. I've had a lot of calls about it, so it's raising a lot of concerns about prosecution. And if you want to make any comment on that, you're welcome. Yeah, absolutely. But again, it's not until January of next year. It still does not seem clear to me, though, after that's done, on the video at least, that the officer says, this means, it doesn't mean you can have a lawyer. It means I'm not screaming at you. I'm not yelling at you. Do you understand that as if it's one thing? And he says, yes. It's not clear to me that this young man has any understanding of what, that he needs a lawyer. My interpretation of it was that he did express an indication that he understood. He also did an indication and an expression that he had been given Miranda warnings prior. He had been given Miranda. That's true. But you don't know the circumstances of that either. We don't know the circumstances of that. But the case law is pretty clear that it is one amongst many considerations for the trial court when it does a totality of the circumstances. And that's my next question. Just because you've been read your Miranda rights, that's only the first inquiry you would agree, right? Yeah. Now we have to also determine whether they were knowingly and voluntarily waived. Correct. And that's at the bottom of the form, right? The waiver? In this case? Typically, that's the form we'll say, or at least an acknowledgment of their rights. I don't know if that indicates understanding. Well, he asks when he gets to the bottom, what's this? And the guy says, this says, I read it to you. That could be a fairly innocent question. How do we know there's a knowing and voluntary waiver when he says, what's this? Knowing and voluntary is always determined by the totality of the circumstances. I mean, I think that when he's read the Miranda rights, I mean, I do think my recollection from my notes is that he was asked whether he understood them and he had prior indication of them. So, you know, I mean, the circuit court, obviously, it considers these facts as well. It makes it now, I understand the court just has to go over the view in the ultimate legal determinations. But I think that totality of circumstances is based upon the whole set of facts. And what you say, Your Honor, I think could just as easily just, like, I bought a car before. I'm not going to go over what I'm saying here. I mean, it doesn't mean I don't understand what I'm saying. It's a whole lot different than knowing and voluntary waiver. I mean, you're talking about a constitutional right that you're trying to waive. Just to go back and forth on this a couple of times. I mean, trying to get an idea of exactly what constitutes a full knowing and understanding waiver or something is a bit of a mesoteric concept because these are not legal scholars that you're going to be able to sort of pry from them, you know, a complicated discourse on the words of the Miranda ones. And what you have to do is you have to read them and explain them to them, which was done in this case. There's an expression of a lack of understanding. Excuse me. I'm sorry. Where did they explain that to them? I thought, well, I could be wrong. I thought they did explain it to them. Where in the video did they ever pause and explain that to them? Okay. Well, maybe I'm wrong. Maybe they just read the Miranda ones. That's true. I might be wrong. Okay. But, again, that's what they're required to do. I mean, they're required to go over the Miranda warnings with the person who's being interrogated. My apologies. I wasn't trying to speak over you. So, again, as far as, you know, the trial court considered the Miranda circumstances, along with everything else that happened in this case with regards to the treatment of the defendant when he was being questioned, the interrogation itself was only 45 minutes long Why wasn't there a juvenile officer? That's a very good question, Your Honor. I mean, there's a statute on this, and the officers clearly violated that. True. We saw a pretty flimsy excuse. Well, I mean, their belief was that because it's a non-man transfer, they don't have to treat him as a juvenile during the interrogation process. That's not the law. It's plainly wrong. And I don't doubt that. But the Supreme Court has also been very clear that, while that's a consideration, it, too, is one amongst all of the surveillance circumstances, which I hopefully made up. Mr. Court, I have another question. I don't believe so. Thank you, Your Honor. Thank you. We appreciate the briefs and arguments from counsel. We'll take this case. I'm sorry. I'm sorry. Yes, you were entitled to revoke. I'll keep it very short. With the state's concession, I ask that you remand the matter back to juvenile court before you're proceeding. And I also would like to say, as to the motion for suppress, as to the voluntariness of that statement, he was awake for nearly 17 hours. There is testimony in the record that he woke up that day around 11, 11 p.m. Did you say 17? Yes, 17. He was awake for about 17 hours. He was arrested at about midnight, and about 4.30 that morning is when they eventually interrogate him. So he sat in the squad room with the blanket for nearly four hours before the interrogation began. And it is very disturbing when considering that he is a 15-year-old child, and confessions or receipts have confirmed for children that he was treated as an adult and he was not. And there's, under the totality of the circumstances, this was not a voluntary statement. And I ask that the court vacate the conviction on this grounds and remand. Thank you. Thank you, counsel. We appreciate your briefs and arguments. We'll take the case under advisement. If there are no further oral arguments before the court, we are adjourned for the day. All rise.